

KAUFF  McGUIRE  MARGOLIS LLP

950 THIRD AVENUE · FOURTEENTH FLOOR
NEW YORK, N.Y. 10022

TELEPHONE (212) 644-1010
FACSIMILE (212) 644-1936

NEW YORK
LOS ANGELES
WWW.KMM.COM

March 26, 2010

**VIA ECF**

Hon. Roslynn R. Mauskopf
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:    Sammarco v. NY1 News et al.
              Civil Action No.: 02-cv-6239 (RRM) (JMA)
              KM&M File No. 08315.6943

Your Honor:

      As co-counsel to Defendants in the above-referenced matter, we submit this letter brief, along with the declaration of Michele A. Coyne, Esq. dated March 26, 2010 ("Coyne Decl.") in opposition to Plaintiff's *in limine* motions dated March 11, 2010 ("Pl. Motion").

      In her motions *in limine*, Plaintiff seeks to preclude Defendants from introducing the following proposed exhibits and anticipated testimony at trial: (1) documents deliberately produced by Plaintiff's prior agent and counsel, Richard Emery, Esq.; (2) the testimony of certain witnesses whose testimony Plaintiff asserts would be cumulative; (3) the testimony of Francis X. Paula Huber ("Huber"), a representative of Plaintiff's subsequent employer, Snug Harbor Cultural Center, Inc. ("Snug Harbor") along with related exhibits, DX 63 and 64; (4) a portion of the testimony of Defendant's psychiatric expert, Dr. Paul Nassar; and (5) Defendants' proposed exhibits DX 1-5, 8 and 9.[1] Defendants respectfully submit that Plaintiff's motions *in limine* should be denied in their entirety.

---

[1] By letter to Your Honor dated March 18, 2010, Plaintiff withdrew her motion seeking collateral estoppel affect of the Unemployment Insurance Appeal Board decision.

4835-9255-4501.2

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 2

*Richard Emery Documents*

Plaintiff seeks to preclude Defendants from offering seven letters/memoranda from Plaintiff to her former agent, Richard Emery (the "Emery Documents") (DX 28-34), on the following grounds:

> It is our impression that these documents were mistakenly exchanged with the defendants after Mr. Emery was discharged by the court because of a conflict of interest. Mr. Emery exchanged these privileged documents along with several other non-privilege [sic] documents depicting the contract negotiations with Defendant Paulus. (Pl. Motion at 4).

Plaintiff's counsel's "impression" regarding the disclosure of these documents is entirely incorrect. Emery produced the Emery Documents without objection in the course of his deposition in this case and stated unequivocally under oath that Plaintiff waived any attorney/client privilege in connection with the entirety of the documents produced, including the Emery Documents. Accordingly, Plaintiff's objection to these documents on the basis of attorney/client privilege is clearly meritless. However, even were these documents both privileged and inadvertently produced seven (7) years ago, Plaintiff's time to reclaim the privilege, if any, has long since passed. Therefore, Plaintiff's eleventh hour effort to assert an attorney/client privilege with regard to the Emery Documents should be rejected.

As a threshold matter, Plaintiff has not demonstrated that the Emery Documents were ever, in fact, privileged. The party asserting the privilege has the burden of demonstrating that an attorney-client privilege exists. *See Mercator Corp. v. United States*, 318 F.3d 379, 384 (2d Cir. 2003); *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927 (1996). "To satisfy its burden, a party must present competent evidence and not merely conclusory or 'ipse dixit' assertions of counsel." *Large v. Our Lady of Mercy Med. Ctr.*, No. 94 Civ. 5986, 1998 WL 65995, at *3 (S.D.N.Y. Feb. 17, 1998). Here, Plaintiff has not met that burden through her conclusory invocations of privilege, either in her *in limine* motion or in her self-serving affidavit. Quite to the contrary, it is undisputed that at the time the documents were created, Emery was serving not as Plaintiff's attorney but as her agent for purposes of the negotiation of her employment contracts with NY1. (Coyne Decl. Exh. 1 [Emery Tr. 9-11]). Indeed, three of the Emery Documents bear the caption "Contract Negotiations." Therefore, Plaintiff cannot show that any privilege ever attached to communications between Plaintiff and her agent. *See Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01 Civ. 8854 (LTS)(THK), 2006 WL 1004472, at *9 (S.D.N.Y. Apr. 17, 2006) ("[S]imply because an attorney participates in the negotiation of a business deal does not, by itself, render his communications on

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 3

business strategy privileged"); *Ashkinzai v. Sapir*, No. 02Civ.0002(RCCMHD), 2003 WL 76986, at *1 (S.D.N.Y. Jan. 9, 2003), *aff'd and reversed in part on other grounds*, No. 02 CV 0002 (RCC), 2004 WL 1698446 (S.D.N.Y. July 28, 2004) (discussions concerning request that attorney serve as negotiating intermediary would not be privileged).

  Assuming, *arguendo*, that the Emery Documents were once privileged, that privilege was intentionally and unequivocally waived. In response to the Complaint in this matter, Defendants moved to disqualify Emery's firm, Emery Cuti Brinckerhoff & Abady P.C., from representing Plaintiff on the grounds that Emery would be required to give testimony that would be prejudicial to Plaintiff. At the April 9, 2003 hearing concerning Defendants' motion, Magistrate Judge Azrack deferred ruling on the motion until after depositions of Defendant Paulus and Emery were taken on the issues raised in the motion. (Coyne Decl. Exh. 2).

  On or about April 14, 2003, Defendants noticed Emery's deposition for May 19, 2003. (Coyne Decl. Exh. 3). Pursuant to that Notice of Deposition, Defendants demanded that Emery produce:

> Any and all notes, memoranda, diaries, letters, files, correspondence, or recordings of any kind or nature relating or referring to: (a) the terms, conditions, and circumstances of plaintiff's employment with NY 1 News; and (b) the deponent's communications with representatives of NY 1 News on behalf of plaintiff during the period March 6, 1996 through March 13, 2001. (*Id.*)

  At his deposition, and in response to the Notice of Deposition, Emery produced 211 pages of documents and that entire production -- including the Emery Documents -- was marked for identification as Deposition Exhibit 1. Emery then testified that these documents were produced in response to Defendants' request for production contained in the Notice of Deposition and that Plaintiff waived any privilege applicable to the documents:

> Q. Did you review any documents in preparation for your testimony today?
>
> A. Some, yes. I reviewed some correspondence between Adele Sammarco and myself that was in our legal file. I didn't review all of it. I reviewed some of it. I can't tell you exactly. I mean, maybe I'd recognize which ones I reviewed and which ones I didn't.

4835-9255-4501.2

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 4

> Q. Do you remember any particular document that you reviewed?
>
> A. Yeah, I reviewed a number of memos from her to me during the course of the time that I represented her starting in '94 while I was representing her in relation to New York 1. There was a stack of them and I'd have to look at them to tell you exactly which ones I read. I went through the stack, but I can't tell you which ones I read completely and which ones I didn't.
>
> Q. Is it your understanding that those documents were the documents that were produced in response to our request for production of documents?
>
> A. Yes. *In fact, we made a decision to produce all of those and we asked Adele to waive privilege up to the time of termination and, therefore, we produced unredacted all the documents.*

(Coyne Decl. Exh. 1 [Emery Tr. 5]) (emphasis added).

Clearly, and contrary to what Plaintiff now asserts in her *in limine* motion, the documents were produced not by virtue of a mistake but, rather, based on an intentional and express waiver of the privilege, if any, that may have attached to them. While Plaintiff may now disagree with that tactical decision (a decision which, according to Emery's testimony, she approved at the time), she should not be permitted to undo years of litigation in this case because she, and her subsequent counsel, have rethought their strategy. *See Friedline v. New York City Dep't of Educ.*, No. 06 Civ. 1836 (JSR), 2009 WL 37828, at *2 (S.D.N.Y. Jan. 5, 2009) ("Although [plaintiff] may disagree with some of the tactical decisions made by her attorney in this action, she 'cannot now avoid the consequences of the acts or omissions of [her] freely selected agent.'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962)); *Fragrancenet.com, Inc. v. FragranceX.com, Inc.*, No. CV 06-2225 (JFB)(AKT), 2009 WL 1086909, at *3 (E.D.N.Y. Apr. 22, 2009) (same); *Jaiyeola v. Carrier Corp.*, 562 F. Supp.2d 384, 391 (N.D.N.Y. 2008), *aff'd*, 350 Fed. Appx. 583 (2d Cir. 2009) ("The present litigation has been pending for over seven years. During the discovery period, Plaintiff was represented by counsel and, although he may disagree now with his attorney's strategic decisions during the discovery process, this disagreement is not grounds for granting a [request for additional discovery].").

Moreover, even if Emery was mistaken about Sammarco's consent to the waiver, Sammarco has, after the passage of so many years, clearly ratified the waiver.

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 5

Ratification of a waiver of attorney-client privilege "need not be explicit and can occur through inaction. Ratification . . . may be found to exist by implication from a principal's failure to dissent within a reasonable time after learning what had been done." *Business Integration Servs. v. AT&T Corp.*, No. 06 Civ. 1863 (JGK), 2008 WL 5159781, at *2 (S.D.N.Y. Dec. 9, 2008) (internal quotations omitted). Here, Plaintiff has long known that Emery disclosed the documents. Both of Sammarco's subsequent counsel, Martha McBrayer, Esq. of Benedict P. Morelli & Associates and Mr. Laufer, have referenced the waiver of privilege during the years of discovery in this litigation. Specifically, McBrayer raised privilege objections in Sammarco's deposition on July 8, 2004. (Coyne Decl. Exh. 4 [Pl. Tr. 437-41]). Mr. Laufer raised privilege objections at Plaintiff's October 25, 2006 deposition. (Coyne Decl. Exh. 4 [Pl. Tr. 792-96]). Each time the issue was raised, however, they were reminded that the privilege had been waived . (Coyne Decl. Exh. 4 [Pl. Tr. 437, 439-40; 793-94]). Nevertheless, neither attorney sought the Court's intervention nor asserted in any manner that the privilege had been inadvertently, or without authorization, waived by Emery. More importantly, one of the documents to which Plaintiff now objects – an August 12, 1999 memorandum to Emery from Sammarco (DX 31) – was relied upon by Defendants in support of their motion for summary judgment which was filed nearly three years ago on May 25, 2007. Significantly, even when confronted with Defendants' use of that document, Plaintiff raised no privilege objection whatsoever. She may not do so now.

In sum, while Plaintiff now claims in her affidavit that the documents were produced without her consent (and therefore Emery, according to Plaintiff, was either mistaken or committed perjury in testifying otherwise), any attempt to reclaim a privilege seven (7) years after the documents were produced, and on the eve of trial, would be untimely. Courts have required disclosing parties to seek judicial intervention immediately in order to avoid a waiver of the attorney/client privilege through inadvertent production. *See, e.g., LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007) (delay of one month in rectifying inadvertent disclosure supported a finding of waiver of privilege); *SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (delay of 12 days supported finding of waiver); *Large*, 1998 WL 65995, at *5 (privilege waived where plaintiff delayed two years in attempting to rectify inadvertent disclosure). These cases demand the conclusion that Plaintiff's attempt to reclaim any privilege that attached to the Emery Documents some seven (7) years after they were produced must be rejected.[2]

---

[2] Purportedly in support of her motion, Plaintiff cites to the American Bar Association ("ABA") Formal Opinion 92-368, but does not bring to the attention of the Court that this opinion was withdrawn by the ABA in 2005 by ABA Formal Opinion 05-437. (Coyne Decl. Exh. 5). In any event, ABA Formal Opinion 05-437 concerns the obligations of a lawyer upon receiving a privileged document from an opposing attorney that the lawyer knows or reasonably should know was inadvertently produced. That opinion is obviously inapplicable here since, far from having reason to believe the documents were inadvertently produced, Emery testified explicitly that Sammarco had decided to waive the privilege.

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 6

The recent decision in *Clarke v. J.P. Morgan Chase & Co.*, No. 08 Civ. 02400, 2009 WL 970940 (S.D.N.Y. Apr. 10, 2009), is instructive. In *Clarke*, the defendant sought the return or destruction of all copies of an email message written by a former in-house lawyer concerning reclassification of employees under the Fair Labor Standards Act. *Id.* at *1. The Court found that the defendant's delay of approximately two (2) months in asserting a claim of privilege once they learned of the disclosure of the email was too long to permit the defendant to reclaim the privilege. *Id.* at *6. The court noted, "Inadvertent disclosure has been held to be remedied when the privilege was asserted *immediately* upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." *Id.* (internal quotations omitted)(emphasis in original). The *Clarke* court concluded that the defendant's delay of two months was "far from immediate." *Id.* In light of *Clarke*, the conclusion is inescapable that Plaintiff's request for judicial intervention concerning the documents is far too late. *See also De Espana v. American Bureau of Shipping*, No. 03 Civ. 3573 LTSRLE, 04 Civ. 0671 LTSRLE, 2005 WL 3455782, at *4 (S.D.N.Y. Dec. 14, 2005) (delay of six months in seeking judicial intervention supports a finding of waiver of any privilege).

Far from seeking immediately to reclaim the privilege, Plaintiff and her subsequent counsel have explicitly and implicitly acknowledged the waiver of privilege on numerous occasions.

First, as noted above, during the course of Plaintiff's deposition on October 25, 2006, Plaintiff's current counsel, Mr. Laufer, repeatedly acknowledged that Plaintiff had waived the privilege with regard to communications with Emery concerning her contract negotiations, although he attempted to draw a distinction between those communications and those related to her contemplation of litigation. (See Coyne Decl. Exh. 4 [Pl. Tr. 792-96]). For example, Mr. Laufer, asserting a privilege objection, stated: "I will object and direct her not to answer. Until you put a context on it. If you want to talk negotiation fine. If you want to talk litigation contemplation of this lawsuit, I will not allow her to answer the question . . . ." *Id.* at 796.[3]

Second, when the parties first filed their Proposed Pretrial Order on May 15, 2009, Plaintiff interposed no privilege objection to any of the documents on Defendants' exhibit list, including the Emery Documents. (Coyne Decl. Exh. 6). More recently, Plaintiff unilaterally filed a revised Proposed Pretrial Order on March 11, 2010, with no prior notice to or consultation with Defendants, in which she suddenly, and for

---

[3] This distinction, in any event, finds no support in the record. Indeed, as noted in the Transcript of the April 9, 2003 hearing, one of the bases for seeking to disqualify Emery's firm was that his testimony would be damaging to Plaintiff's claim of sexual harassment because he had a number of discussions with Paulus over the years about Sammarco and never brought allegations of harassment to Paulus' attention. (*See* Coyne Decl. Exh. 2, at 4).

4835-9255-4501.2

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 7

the first time, interposed privilege objections to some documents, including the Emery Documents. (Coyne Decl. Exh. 7).

Third, Plaintiff has acknowledged the waiver of any privilege that may have attached to her communications with Emery by, even now, not objecting in her *in limine* motion to Defendants' proposed use as trial exhibits of numerous other communications with Emery. Specifically, in her *in limine* motion, Plaintiff has not raised a privilege objection to the following communications between herself and Emery: (1) handwritten notes from Sammarco to Emery complaining about Landis (DX 4);[4] (2) a May 27, 1997 letter to Emery from Sammarco concerning contract negotiations (DX 7); (3) a July 4, 1997 letter to Emery from Sammarco concerning her contract negotiations (DX 8); (4) a November 27, 1997 letter to Emery from Sammarco concerning her contract negotiations and her fear of being fired (DX 9); (5) an October 28, 1998 letter to Emery from Sammarco containing a sample reel of her work (DX 14); (6) a February 3, 1999 letter to Emery from Sammarco concerning her television commercial and her desire to act (DX 15); (7) an August 5, 1999 memorandum to Emery from Sammarco concerning various workplace issues (DX 16); (8) Sammarco's handwritten note to Emery complaining that Paulus has not addressed her situation (DX 17); (9) a November 16, 1999 faxed note to Emery from Sammarco concerning another hire (DX 18); (10) a letter to Jim Watkins, on which Emery is copied, concerning her job search (DX 24); (11) a November 7, 2000 "Overview" to Emery from Sammarco concerning various workplace issues (DX 35); and (12) a November 17, 2000 communication to Emery from Sammarco concerning various workplace issues (DX 36). Plaintiff cannot pick and choose from among communications those for which she desires to maintain a privilege and those for which she waives the privilege. Such selective waiver is not permitted. *See In re Omnicom Group Inc. Securities Litigation*, 233 F.R.D. 400, 413 (S.D.N.Y. 2006)("[I]f a litigant discloses an otherwise privileged communication, he may be deemed to have waived the privilege with respect to other communications on the same topic."); *Brewer v. Hall*, No. CV 00-6072 (ADS)(ARL), 2005 WL 2219304, at *2 (E.D.N.Y. Sept. 12, 2005) ("Courts in this Circuit generally apply a rule of 'subject-matter waiver' . . . and require disclosure of all otherwise privileged communications on the same subject."); *see also U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (party may not use the privilege "to disclose some selected communications for self-serving purposes").

Fourth, one of her communications with Emery -- the May 27, 1997 communication from Plaintiff to Emery -- appears on *Plaintiff's* exhibit list (Coyne Decl. Exh. 8).

---

[4] Notably, in her motion, Plaintiff objects on the grounds of relevance, but not on the grounds of privilege, to three communications between Emery and Sammarco – DX 4, 8, and 9. The relevance objections to these documents are addressed below.

4835-9255-4501.2

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 8

    Finally, Plaintiff's decision to file publicly four of the seven "privileged" documents to which she now objects, rather than to seek *in camera* review of the documents, makes plain that any privilege related to these documents has been waived. *See Acme American Repairs, Inc. v. Katzenberg*, No. CV-03-4740 (BMC)(SMG), 2007 WL 952064, at *8-9 (E.D.N.Y. Mar. 29, 2007) (once communications are revealed in publicly filed documents or open court proceedings, they are no longer privileged).

    While Plaintiff may attempt to draw a distinction, which was reflected in the objection raised by Mr. Laufer at Plaintiff's deposition, between contract negotiations and her contemplated litigation, that distinction offers no support to Plaintiff's *in limine* motion. The Emery documents, on their face, all either pertain directly to Plaintiff's contract negotiations, or concern other workplace matters with no reference to any contemplated litigation:

- DX 28 are undated "Notes" from Sammarco to Emery concerning various workplace issues, with no mention of contemplated litigation.

- DX 29 is a November 11, 1996 letter from Sammarco to Emery. In that letter, Plaintiff complains, "My contract was up in June and it has been five months since Steve Paulus approached me to discuss re-negotiations." Plaintiff goes on to describe examples of mistreatment to which she has been subjected because she has not signed-on to a new agreement, stating "THIS about sums up the lack of respect I receive for my work at NY1 since I have not signed a contract."

- DX 30 is an undated communication from Sammarco to Emery concerning various workplace issues and noting that Landis and Paulus had "put [her] on notice." Again, there is no mention of a contemplated lawsuit.

- DX 31 is an August 12, 1999 memorandum from Sammarco to Emery which is entitled "NY1 Contract Negotiations and altered image." In this document, Sammarco explicitly references the contract negotiations, stating "'[T]his image is the leverage you need to negotiate my salary and benefits with Steve Paulus."

- DX 32 is a September 6, 1999 memorandum from Sammarco to Emery, the stated subject of which is "Contract Negotiations." In this memorandum, Sammarco complains that she is not receiving substitute anchoring opportunities, an action that she believes is for "contract negotiation purposes."

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 9

- DX 33 is an October 25, 1999 memorandum from Sammarco to Emery, the stated subject of which is "Contract Negotiations & Anchor fill-in slots." Once again, Sammarco complains about her lack of anchoring opportunities, stating "It seems these ridiculous turn of events occur when my contract is up for negotiations."

- DX 34 is a November 9, 1999 letter from Sammarco to Emery apparently enclosing a book on office politics and referencing her contract negotiations.[5]

Even accepting for the sake of argument Mr. Laufer's artificial distinction between waiver of the privilege for communications concerning contract negotiations and non-waiver for communications concerning contemplated litigation – a distinction that finds no support in the record – these documents are not outside the area of acknowledged waiver.

Finally, the Emery Documents are highly relevant to this matter and, with the trial just a few weeks away, fairness dictates that Defendants should not be forced to alter their trial preparation strategy because of Plaintiff's seven (7) year delay in raising this issue. *See Clarke*, 2009 WL 970940, at \*7 (fairness weighed in favor of waiver because the defendant raised the issue of the inadvertent disclosure one day before the Rule 30(b)(6) deposition and "[p]laintiffs should not have been forced to alter their deposition preparation at the last minute, so as to take account of [d]efendant's belatedly raised claim"); *see also Atronic Int'l, GMBH v. SAI Semispecialists of America, Inc.*, 232 F.R.D. 160, 166 (E.D.N.Y. 2005) (where disclosed emails contained information that "go to the heart" of the litigation and contained admissions, non-disclosing party would be prejudiced by restoring the privilege); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 5298 LMM RLE, 93 Civ. 8270 LMM RLE, 94 Civ. 1317 LMM RLE, 93 Civ. 6876 LMM RLE, 1996 WL 944011, at \*6 (S.D.N.Y. Dec. 19, 1996) (where during seven-month delay non-disclosing party "absorbed the contents of the documents" and used them at a deposition, it would be unfair to restore the privilege).

The Emery Documents were produced pursuant to an explicit waiver of privilege approximately seven (7) years ago and Plaintiff and her attorneys have never demanded their return and indeed have acknowledged the waiver of privilege. As such, there is no basis whatsoever for Plaintiff's motion to preclude Defendants' introduction of the Emery Documents into evidence and her motion should be rejected.

*The Allegedly "Cumulative" Witnesses*

---

[5] In this letter, Sammarco does make reference to unfair treatment, but she apparently theorized then that she was being treated less favorably than "minority reporters" because of her race.

KM&M
KAUFF MCGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 10

In her *in limine* motion, Plaintiff lists the names of sixteen (16) witnesses whose testimony she claims is "cumulative" and seeks on that basis to preclude an unspecified number of these witnesses from testifying at trial.[6] While Plaintiff does not cite to any legal authority in support of her argument, she is presumably attempting to rely upon Federal Rule of Evidence 403, which provides in relevant part, "Although relevant, evidence may be excluded if its probative value is *substantially outweighed* . . . by considerations of . . . *needless* presentation of cumulative evidence." (emphasis added). Plaintiff's motion, based solely on invocation of the term "cumulative," should be rejected because Plaintiff does not, and cannot, satisfy the standard of Federal Rule of Evidence 403 for exclusion of such relevant evidence.

"Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by is contribution to the length of the trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." *U.S. v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996) (*citing* Fed. R. Evid. 403); *see also U.S. v. Love*, 254 Fed. Appx. 511, 2007 WL 3391169, at *7 (6th Cir. Nov. 14, 2007) (same); *In re Jacoby Airplane Crash Litig.*, No. 99-6073 (HAA), 2007 WL 2746833, at *13 (D.N.J. Sept. 19, 2007) (same). Evidence is not "cumulative" merely because other evidence concerning a particular fact has already been admitted. *See Love*, 2007 WL 3391169, at *7; *Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007); *Miller v. Stovall*, 641 F.Supp.2d 657, 668 (E.D. Mich. 2009); *see also Watson v. E.S. Sutton, Inc.*, No. 02 Civ. 2739 (KMW), 2005 WL 2170659, at *20 (S.D.N.Y. Sept. 6, 2005) (rejecting objection to admission of testimony of three former employees concerning co-workers malfeasance as "absurd given the length of the trial" because the women "testified to different incidents, [and] had different views.") (*citing Leopold v. Baccarat, Inc.*, 174 F.3d 261, 269-70 (2d Cir. 1999)).

As an initial matter, Plaintiff mischaracterizes the proffered testimony concerning the witnesses. Plaintiff asserts that "Defendants offer [the 16 witnesses], as witnesses who will testify as to their knowledge regarding the non-hostile work environment and the plaintiff's weakness as a reporter/anchor." Plaintiff ignores the specific proffers for a number of these witnesses that will directly refute Plaintiff's testimony. For example, as set forth in Defendants' proffer:

- Lewis Dodley "will refute Plaintiff's allegations that Mr. Dodley said she was a 'great reporter.'"

---

[6] Although in her *in limine* motion, Plaintiff makes reference to "17 witnesses" whose testimony she believes is "cumulative," she in fact only lists sixteen (16) names: Dave Aloisio, Amy Boon, Myrtle Suban, Lewis Dodley, Hayley Friedman, Gerry Gallagher, Baron Gullette, Marvin Hoffman, Beryl Holness, Leslie Martelli-Hines, Annika Pergament, John Tenke, Kristen Shaughnessy, Roma Torre, Joe Truncale and Bernadine Han.

4835-9255-4501.2

- Marvin Hoffman has specific knowledge concerning the work environment during a period when a small number of employees, including Plaintiff, worked remotely from Albany and during which Plaintiff alleges that she was subjected to a number of harassing comments.

- Kristen Shaughnessy will testify concerning the alleged creation of a video of Plaintiff dealing with a broken zipper, which is one of the central allegations of Plaintiff's complaint.

- Roma Torre will refute Plaintiff's allegation that Torre contacted Plaintiff's parents concerning Plaintiff's on-air performance.

- Joe Truncale has knowledge of an altered photograph created of the Plaintiff, another central allegation in this case.

- Bernadine Han will refute "Plaintiff's allegations that Mr. Paulus inappropriately touched Ms. Han."[7]

In any event, the testimony of Defendants' witnesses concerning (1) the work environment and (2) Plaintiff's poor performance will be highly probative to the matters to be tried and that probative value would not be outweighed (much less substantially outweighed) by considerations of the needless presentation of cumulative evidence. Defendants anticipate that the testimony of these witnesses will be relatively brief and therefore their testimony will not add substantially to the length of the trial. By contrast, the proffered testimony has substantial probative value to the issues to be decided in this case. With regard to her claims of harassment, most of Plaintiff's allegations are utterly lacking in any specificity in terms of date, time and context. Therefore, Defendants are in the difficult position of challenging Plaintiff's allegations by "proving a negative;" that is, submitting evidence that harassment did not occur by presenting the testimony of people in the work environment who will testify that the environment was not hostile. These individuals were employed at different times and in different capacities at NY1. It is critical to Defendants' defense in this action to present testimony from a variety of witnesses that they did not witness harassment in the open environment in which they worked.

Similarly, testimony concerning Plaintiff's poor performance, from those in a position to witness it, is critical to Defendants' case. Plaintiff will likely testify that her performance was at all times excellent and that criticism of her performance only arose

---

[7] In their *in limine* motions, Defendants seek to preclude testimony concerning what Plaintiff alleges was consensual conduct between Paulus and Han. Han will offer the above testimony only in the event that Defendants' motion *in limine* on this ground is denied.

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 12

after she complained of what she alleges was harassing behavior. As noted above, the proposed witnesses, who held differing roles at different times at NY1, can confirm that Plaintiff's performance was subpar before she ever complained about supposed harassment. In addition, only Plaintiff's co-workers were in a position to view Plaintiff's actual performance, as opposed to the viewing audience which saw a re-worked and edited final product.

Because the proffered testimony is highly probative to this case, and will not substantially lengthen the trial, Defendants respectfully request that Plaintiff's motion *in limine* concerning "cumulative" witnesses be denied.

*Huber's Testimony*

Plaintiff seeks to preclude the testimony of Huber, a representative of Plaintiff's subsequent employer, Snug Harbor, and the introduction of DX 63 and 64 on the grounds that such evidence is irrelevant. (*See* Coyne Decl. Exhs. 9-10). Plaintiff's argument is spurious on its face and should be rejected.[8]

Regrettably, Plaintiff's assertions to this Court are once again simply false. Plaintiff claims that "after several years of unemployment, Ms. Sammarco was offered a job at the [Snug Harbor] Center." (Pl. Motion at 4). In fact, Plaintiff became employed by Snug Harbor in December 2005, immediately following her voluntary resignation from another subsequent employer, COAH. (Coyne Decl. Exhs. 11-12). Thereafter, Plaintiff resigned from Snug Harbor on October 26, 2006. (Coyne Decl. Exh. 9). Based on the record evidence, Huber was Sammarco's supervisor at Snug Harbor and she was the person to whom Sammarco tendered her resignation.

While in her *in limine* motion, Plaintiff claims "[i]t is difficult to fathom the relevance of calling this witness," to the contrary, the relevance of this witness is readily apparent. A plaintiff is required to "attempt to mitigate her damages by using reasonable diligence in finding other suitable employment." *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (citation omitted). Plaintiff's decision to resign from her employment at Snug Harbor constitutes a failure to mitigate her alleged damages and tolls any entitlement to back pay from the date of her resignation. *See Hawkins v. 115 Legal Serv. Care*, 163 F.3d 684, 696 (2d Cir. 1998) ("[A] claimant who voluntarily resigned from comparable employment for personal reasons would not have adequately mitigated damages . . . ."); *see also EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992) (same). Therefore, Huber's testimony and the related documents

---

[8] Defendants have moved *in limine* to exclude the introduction of any evidence of Plaintiff's alleged lost wages following her voluntary resignation from employment at the Council on the Arts and Humanities ("COAH") or, in the alternative, following her voluntary resignation from her employment at Snug Harbor. Defendants will seek to introduce the testimony of Huber and the related documents only if the Court denies their motion.

4835-9255-4501.2

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 13

concerning Plaintiff's employment with, and subsequent resignation from, Snug Harbor is critical to Defendants establishing Plaintiff's failure to mitigate her alleged lost pay damages. Plaintiff's motion *in limine* is entirely baseless and should be rejected.

*Testimony of Dr. Nassar*

It is unclear the grounds or scope of Plaintiff's motion *in limine* concerning the testimony of Defendants' psychiatric expert, Dr. Paul Nassar. Plaintiff states as follows: "The defendants also attempt to blame Ms. Sammarco's complaints of harassment and retaliation upon the demise of her relationship with her fiance via the expert testimony of Dr. Paul Nassar" and then appears to raise a relevance objection to Dr. Nassar's testimony. (Pl. Motion at 5).

Defendants served Plaintiff with a Notice of Examination pursuant to Federal Rule of Civil Procedure 35 on March 6, 2006. (Coyne Decl. Exh. 13). Dr. Nassar conducted a psychiatric examination of Plaintiff on April 28, 2006 and issued his report on August 29, 2006. (Coyne Decl. Exh. 14). Plaintiff did not object to participating in the Rule 35 examination. To the extent that Plaintiff is now seeking to object to that examination, more than three years later, her objection is clearly too late and should be rejected. Moreover, Dr. Nassar's testimony is unquestionably relevant. Plaintiff has asserted claims for damages for "mental anguish" and Dr. Nassar will offer his expert opinion on whether Plaintiff has suffered emotional distress and the source of any emotional distress. Plaintiff elected not to take Dr. Nassar's deposition but will have an opportunity to cross-examine Dr. Nassar at trial concerning his expert opinion, and there is therefore no basis for this *in limine* motion.

*Proposed Exhibits DX 1-5, 8 and 9*

Finally, Plaintiff seeks to preclude introduction of Defendants' Proposed Exhibits 1-5, 8 and 9 on relevance grounds, asserting that "[t]hey appear to be documents from 1995-1999 which pre-date any complaints of harassment or retaliation." (Pl. Motion at 5). These proposed exhibits, which Plaintiff does not bother to describe or provide to the Court in support of her motion, are relevant and Plaintiff's objection to the introduction of these documents should therefore be rejected.

DX 1 and DX 2 relate to a Freedom of Information Law ("FOIL") lawsuit that NY1 filed in connection with a story on which Sammarco was working. (Coyne Decl. Exhs. 15-16, 4 [Pl. Tr. 585]).[9] Plaintiff viewed the lawsuit as an accomplishment,

---

[9] Notably, the employee whose termination was the subject of the FOIL request and subsequent lawsuit, Ray Hagemann, appears on Plaintiff's witness list, although Defendants have moved *in limine* to preclude him from testifying.

4835-9255-4501.2

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 14

testifying that it was precedent-setting. (Coyne Decl. Exh. 4 [Pl. Tr. 585]). Therefore, documents concerning the FOIL lawsuit, are clearly relevant to this case.

DX 3 is a January 18, 1996 memorandum referring to Plaintiff's selection as co-host of a monthly news show. (Coyne Decl. Exh. 17). Obviously, a document concerning Plaintiff's work assignments is relevant to this case.

DX 4 is a January 3, 1996 email message from Landis to Sammarco inquiring about the reason for Plaintiff's tardiness to work; the document also contains Sammarco's handwritten message to Emery objecting to the email. (Coyne Decl. Exh. 18). This document, which reflects Plaintiff's problems working with Landis prior to any of her complaints of allegedly harassing behavior, is clearly relevant.

DX 5 is an email message from Sammarco to Paulus dated January 23, 1996. (Coyne Decl. Exh. 19). In this email message, Sammarco complains at length concerning various aspects of her employment. And, once again, this document concerning her supposed mistreatment pre-dates her complaints about alleged incidents of harassment. (Pl. Motion at 5). These alternative theories as to the source of her mistreatment at work are highly relevant to this case.

DX 8 is a July 4, 1997[10] letter from Plaintiff to Emery which references her contract negotiations, including her salary demand, and her proposed assignment to Environmental Reporter. (Coyne Decl. Exh. 20). This document is, at a minimum, relevant to Plaintiff claim of discriminatory pay disparity.

Similarly, DX 9, a November 27, 1997 letter from Plaintiff to Emery, relates to Plaintiff's salary demands. (Coyne Decl. Exh. 21). In this document, Plaintiff also makes clear her fear that she will be fired, long before she ever complained about alleged harassment. Again, this document is clearly relevant to this action.

Plaintiff's objections to all of these proposed exhibits are unfounded and should be rejected.

*Conclusion*

For the reasons set forth above, Defendants respectfully request that Plaintiff's *in limine* motions be denied in their entirety.

---

[10] While Plaintiff asserts that all of the exhibits are from 1995-1996, that is clearly false. (Pl. Motion at 5).

4835-9255-4501.2

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Hon. Roslynn R. Mauskopf
March 26, 2010
Page 15

                              Respectfully submitted,

                              Michele A. Coyne

Enclosures

cc:    Bettina Plevan, Esq.
        Keisha-Ann Gray, Esq.
        Kenneth A. Margolis, Esq.
        Andrew Laufer, Esq.

4835-9255-4501.2