REVISED DRAFT 4/21/10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ADELE SAMMARCO,

                              Plaintiff,                    **JURY INSTRUCTIONS**

        - against -                                         02-CV-06239 (RRM) (JMA)

NEW YORK 1, PETER LANDIS, STEVE
PAULUS, ELIZABETH FANFANT,

                              Defendants.
----------------------------------------------------------X
MAUSKOPF, United States District Judge.


        Ladies and gentlemen of the jury, now that the evidence in this case has been presented

and the attorneys have concluded their closing arguments, it is my responsibility to instruct you

as to the law that governs this case.  My instructions will be in three parts:

        **FIRST**:  I will instruct you regarding the general rules that define and govern the duties

of a jury in a civil case,

        **SECOND**:  I will instruct you as to the legal elements of the claim alleged in the

complaint—that is—the specific elements that the Plaintiff must prove by a preponderance of the

evidence, and

        **THIRD**:  I will give you some important principles that you will use during your

deliberations.

REVISED DRAFT 4/21/10

## I.       GENERAL INSTRUCTIONS

You are about to enter your final duty, which is to decide the facts of this case.  You must pay close attention to me now.  I will go as slowly as I can and be as clear as possible.

It has been obvious to me and to counsel that you have faithfully discharged your duty to listen carefully and observe each witness who testified.  Your interest never lagged, and it is evident that you followed the testimony with close attention.  Thank you.  I would also like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

I ask that you now give me that same careful attention that you gave at trial as I instruct you on the law.

It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

You must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law ought to be, it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.

You, the members of the jury, have the important responsibility to pass upon and decide the facts of this case.  You are the sole and exclusive judges of the facts.  You alone pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts

REVISED DRAFT 4/21/10

as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

     With respect to any question concerning the facts, it is your recollection of the evidence that controls, not that of counsel and not that of the Court. Anything I may have said during the trial or may say during these instructions with respect to a fact matter is not to be taken in substitution for your own independent recollection. What I say is not evidence.

     Since you are the sole and exclusive judges of the facts, I do not mean to indicate my opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be.

     You are reminded that you took an oath to render judgment impartially and fairly. In determining the issues of fact and rendering a verdict in this case, you should perform your duty with complete impartiality and without bias, sympathy, or prejudice to any party. All parties to a civil lawsuit, as in this case, a corporate entity, the Plaintiff, and the three Defendants individuals, are entitled to a fair trial and are equal before the law. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

     Let me emphasize that a question put to a witness by itself is not evidence. It is only the question, coupled with the answer, that constitutes evidence. However, at times during the trial, I have sustained objections to questions asked without allowing the witness to answer, or where an answer was made, instructed that it be stricken from the record and that you disregard it and dismiss it from your minds. In reaching your decision, you may not draw any inference or conclusions from an unanswered question, nor may you consider testimony that has been stricken from the record. The law requires that your decision be made solely upon the evidence

3

REVISED DRAFT 4/21/10

before you.  Such items that I have excluded from your consideration were excluded because they were not legally admissible.

You should also not give any consideration to the fact that the attorneys on either side may have objected to certain questions being asked or to certain evidence being received.   It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the sidebar out of the hearing of the jury.  All those questions of law must be decided by the Court.  You should not show any prejudice against an attorney or a party because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked the Court for rulings on the law.  You should also not be concerned with the reason for those rulings, and you are not to draw any inferences from them.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

The burden of proof rests on the Plaintiff.  The Defendants have the burden of proof only with respect to affirmative defenses on which – I will instruct you later. as to an affirmative defense that the Defendants have to prove.

The Plaintiff's claim must be established by a preponderance of the credible evidence.  The "credible evidence" means the testimony or exhibits that you find to be worthy of belief.  A "preponderance of the evidence" means the greater part of such evidence.  "Preponderance of the evidence" does not mean the greater number of witnesses, or the greater length of time taken by either side.  The phrase refers to the quality of the evidence, that is, its convincing quality, the

REVISED DRAFT 4/21/10

weight, and the effect that it has on your minds.  The law requires that for the Plaintiff to prevail

on her claim, the evidence in support of that claim must appear to you as more likely

representing what took place than the evidence opposed to the Plaintiff's claim.  If it does not, or

if it weighs so evenly that you are unable to say that there is a preponderance on either side, then

you must decide the question in favor of the Defendants.  That is, you may find in the Plaintiff's

favor only if the evidence favoring the Plaintiff's claim outweighs the evidence opposed to the

Plaintiff's claim.

Some of you may have heard of proof beyond a reasonable doubt, which is the standard

of proof in a criminal trial.  That standard does not apply in a civil case such as this, and you

must put it out of your mind.  The proper standard in this case is proof by a preponderance of the

evidence.

I have said several times now that your verdict must be based upon the evidence or lack

of evidence.  I will now give you some rules about the various types of evidence, and about how

to evaluate the testimony of witnesses.  After that, I will discuss the Plaintiff's specific claims

against the Defendants, and finally what the Plaintiff must prove by a preponderance of the

evidence in order to prevail.

In your deliberations, you may consider both direct and circumstantial evidence.  As I

explained at the start of the trial, evidence is direct when the facts are shown by exhibits that are

admitted into evidence, or by testimony that is sworn to by witnesses who have actual knowledge

of the facts from the exercise of their senses (such as something they heard, something they saw,

something they smelled, something they touched, and so on).  Evidence is circumstantial if it

tends to prove a fact by proof of other facts.  You may infer on the basis of reason and experience

from one or more established facts the existence of some other fact.

REVISED DRAFT 4/21/10

As you may recall, at the start of the trial, I gave you an example of circumstantial evidence.  I will give it to you again.  Assume that when you came into the courthouse this morning, it was a clear, sunny day.  After sitting in this courtroom all day, without looking out a window, without going outside, you see someone enter the courtroom holding a dripping wet umbrella, followed by someone wearing a raincoat, also wet.  You personally have not been able to observe directly whether it is raining outside, or heard rain falling on the roof.  But upon the combination of facts, it would be reasonable and logical for you to conclude that it was raining.  That is an example of proof through circumstantial evidence.  You infer, on the basis of reason and experience, from established facts, the ultimate fact to be proved.

Circumstantial evidence is of no less value than direct evidence; it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence, but simply requires that your verdict be based on a preponderance of all the evidence presented.

You may also draw inferences from the evidence.

An inference is not a suspicion or a guess.  It is, rather, a logical, factual conclusion which you might reasonably draw from other facts that have been proved.  As I have told you, you are permitted to draw inferences—but are not required to do so—from either direct or circumstantial evidence.

In drawing inferences, you should exercise your common sense.  There are times when different inferences may be drawn from different facts, whether they are proved by direct or circumstantial evidence.  The Plaintiff may ask you to draw one set of inferences, while the Defendants ask you to draw another.  It is only for you to decide what inferences you will draw from the facts which you decide have been proven.

6

REVISED DRAFT 4/21/10

The evidence in this case consists of the sworn testimony of the witnesses and the exhibits received in evidence.

Turning to the subject of exhibits, exhibits that have been marked for identification but have not been received in evidence, however, may not be considered by you as evidence.

As I instructed you previously, statements, arguments, and questions of the lawyers for the parties in this case are also not evidence.  Nor are objections by the lawyers, or any testimony I tell you to disregard.  Finally, anything you may see or hear about this case outside the courtroom, whether it be on the television, in the newspaper, on the Internet, or otherwise, is not evidence, and you should not consider it, nor should you conduct your own research as to the facts of this case.  You must make your decision based only on the evidence that you see and hear in court.

You should consider the evidence in light of your own common sense and experience, and you may draw reasonable inferences from the evidence.

You have had the opportunity to observe all the witnesses.  It is now your job to decide whether to believe each witness's testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

You may be wondering how you determine where the truth lies.  You watched each witness testify and everything a witness said or did on the witness stand counts in your

7

REVISED DRAFT 4/21/10

determination.  You may consider the impression you had of the witness.  Was she or he frank, forthright and candid, or evasive and edgy as if hiding something?  You may consider the witness's demeanor, which means behavior, bearing, manner and appearance while testifying.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which the witness testified, the accuracy of his or her memory, the witness's candor or lack of candor, his or her intelligence, the reasonableness and probability of the witness's testimony, and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, in deciding credibility you must try to size up a witness in light of his or her demeanor, the explanations given and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something or has failed to say or do something which is inconsistent with the witness's present testimony.  If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.  You may accept all or part of a witness's testimony; similarly, you may reject all or part of a witness's testimony.

REVISED DRAFT 4/21/10

If a witness is shown knowingly or willfully to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you think it deserves.

Evidence of discrepancies in a witness's testimony may be a basis to disbelieve a witness's testimony.  On the other hand, discrepancies in a witness's testimony or between that witness's testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.  People sometimes forget things, they make mistakes, and even a truthful witness may be nervous and contradict himself.  It is also a fact that two people witnessing an event will see or hear it differently, and innocent mistaken recollection, like failure of recollection, is not an uncommon experience.  Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  An interested witness is not necessarily less believable

REVISED DRAFT 4/21/10

than a disinterested witness.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide from the demeanor of the witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced intentionally or unintentionally by his or her interests.  You may, if you consider it proper, under all of the circumstances, decide not to believe the testimony of such a witness, even though it is not otherwise challenged or contradicted.  However, you are not required to reject the testimony of such a witness and may accept all or such part of his or her testimony as you find reliable and reject such part as you find unworthy of acceptance.

In determining the factual issues in the case, bear in mind that the law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to

REVISED DRAFT 4/21/10

testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

Under your oath as jurors you are not to be swayed by sympathy.  Nor is it proper for you to consider any personal feelings you may have about the parties, the witnesses, the attorneys, or the nature of the claim against the Defendants to influence you in any way.

The parties in this case are entitled to a trial free from prejudice.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence, and only the evidence, without regard to the consequence of your decision.

Now that I have instructed you on the general considerations that will guide your deliberations in this case, I will instruct you on the legal principles that govern the claims at issue.

REVISED DRAFT 4/21/10

## II:  PLAINTIFF'S CLAIMS

**Plaintiff's Claims and Defendants' Defenses Generally**

Plaintiff alleges that she was sexually harassed by individuals who worked with her at NY1 such that she was subjected to a hostile work environment.  She also alleges that Defendants retaliated against her by taking her off the anchor desk and terminating her employment because she complained about the alleged sexual harassment.  She also alleges that she did not receive equal pay for the work she performed at NY1 as compared with male co-workers who she claims were similarly situated and performed equal work to her.

Defendants assert that Plaintiff was not subject to a hostile work environment based on sexual harassment at NY1, that they exercised reasonable care to prevent such behavior and that it took prompt and appropriate action regarding any complaints Plaintiff made.  Defendants also assert that NY1's decision with respect to her anchoring, the non-renewal of her contract, and the termination of her contract were based to terminate Plaintiff's employment was based on legitimate and non-retaliatory reasons.  Defendants also assert that Plaintiff did not perform equal work to the male co-workers with whom she seeks to compare her compensation and that any pay differentials were due to factors other than Plaintiff's gender.

Plaintiff brings her claims under federal, State and City law, and against NY1 and the three individual Defendants, Peter Landis, Steven Paulus and Elizabeth Fanfant.  I will first explain the charges against NY1 under federal, State and City law.  I will then explain the law with regard to the liability of the individual defendants.

REVISED DRAFT 4/21/10

**A.**     **Claims One and Two:  Hostile Work Environment Sexual Harassment Under Title VII and the New York State Human Rights Law**

Plaintiff contends that she was subjected to sexual harassment that created a "hostile work environment."  I will first discuss Plaintiff's hostile work environment sexual harassment claim against NY1 under Federal and State Law.  The basis for these two claims are the federal anti-discrimination law known as Title VII of the Civil Rights Act of 1964 (otherwise known simply as Title VII), and New York State's anti-discrimination statute, which is commonly referred to as the New York State Human Rights law.

To establish a claim of hostile work environment sexual harassment, Plaintiff must prove, by a preponderance of the credible evidence, each of the following five elements:

1.  Plaintiff was subjected to unwelcome conduct;

2.  The unwelcome conduct was directed toward Plaintiff because of her gender;

3.  The unwelcome conduct was so severe or pervasive as to alter the conditions of Plaintiff's employment and create an abusive working environment;

4.  The unwelcome conduct was <u>both</u> objectively and subjectively offensive; and

5.  There is a basis for holding the employer liable.  In this case, NY1 is the employer.

I will now give you further instructions concerning these elements.

First, for conduct to be "unwelcome," it must be uninvited.  In considering whether or not the conduct was "unwelcome," you must consider the totality of the circumstances and the context in which the conduct occurred.  And in so doing, you should consider the Plaintiff's own actions to determine whether or not she viewed the conduct as unwelcome.

REVISED DRAFT 4/21/10

Second, the Plaintiff must prove that the unwelcome conduct alleged in this case, occurred <u>because</u> of her gender – that is, that Plaintiff's gender was a motivating factor behind the discriminatory treatment to which Plaintiff claims she was subjected.



REVISED DRAFT 4/21/10

Third, Plaintiff must prove that the unwelcome conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment.  To constitute an abusive working environment, Plaintiff must prove by a preponderance of the credible evidence that her work environment was permeated with discriminatory intimidation, ridicule, or insult that is sufficiently severe or pervasive so as to alter the conditions of the Plaintiff's employment and create an abusive working environment.

In assessing the severity or pervasiveness of the harassing conduct, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  Simple teasing, offhand comments, or isolated acts, unless very serious, will not suffice.  However, a single, severe act can be sufficient if it alters the conditions of Plaintiff's employment and creates an abusive working environment.

As to conduct occurring outside of the workplace, employers are generally not responsible for non-work related interactions between co-workers because those interactions are not part of the work environment.  However, such conduct may support a claim of hostile work environment sexual harassment where the Plaintiff can establish that the off-duty conduct was sufficiently severe or pervasive so as to alter the terms and conditions of Plaintiff's employment for the worse and create an abusive working environment.  For example, where the non-work related conduct by a co-worker reasonably leads to intimidation or fear within the work environment, and does, in fact, alter the conditions of Plaintiff's employment, such conduct may support a claim of hostile work environment sexual harassment.

In determining whether Plaintiff has proven that the harassing conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create a hostile or abusive

REVISED DRAFT 4/21/10

working environment, you must consider the totality of the circumstances.  Some of the factors

that you may consider are:

> the nature, frequency and severity of the unwelcome conduct;

> the context in which the offensive conduct occurred;

> whether the conduct was physically threatening or humiliating, or merely offensive utterances;

> whether the conduct unreasonably interfered with Plaintiff's work performance; and

> the effect on Plaintiff's psychological well-being.

REVISED DRAFT 4/21/10

Fourth, Plaintiff must prove by a preponderance of the credible evidence that her working environment was both objectively <u>and</u> subjectively abusive.  That is, Plaintiff must prove that a reasonable person in Plaintiff's position, considering all of the circumstances, would find the environment hostile or abusive – the objective standard -- <u>and</u> that Plaintiff herself actually perceived it to be so – the subjective standard.

REVISED DRAFT 4/21/10

Finally, Plaintiff must prove, by a preponderance of the credible evidence, that Plaintiff's employer – in this case, NY1 – was liable for the conduct which created the hostile work environment.  To do this, Plaintiff must prove that NY1 either "knew" or "should have known" about the harassing conduct and failed to take prompt and appropriate remedial action.  In determining whether or not NY1 knew or should have known about harassing conduct, Plaintiff must prove that someone 1) sufficiently high in the management hierarchy to act on behalf of the Company  or 2) someone charged pursuant to NY1's anti-discrimination policy with stopping harassment or required to inform the Company of such harassment, either knew of the alleged harassment, or should have known of such conduct through the exercise of reasonable care.  In determining whether NY1 took appropriate remedial action, you should consider the totality of the circumstances, including whether NY1 investigated any complaints made by Plaintiff and addressed the issue raised.

REVISED DRAFT 4/21/10

### 1. **Affirmative Defense**

If you find that Plaintiff has proved each element of her claim of hostile work environment sexual harassment under federal Title VII and the New York State Human Rights Law, you must consider whether NY1 can prove a valid defense -- what we lawyers call an "affirmative defense" -- to those claims.   NY1 bears the burden of proof to establish its affirmative defense by a preponderance of the credible evidence.   Only if you find that Plaintiff has met her burden of proving all of the elements of her claims should you consider this defense.

To establish its affirmative defense and avoid liability on these claims, NY1 must prove by a preponderance of the credible evidence, each of the following two elements:

1. That NY1 exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

2. Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by NY1.

If NY1 proves these two elements by a preponderance of the credible evidence – it has established a complete defense to Plaintiff's hostile work environment claims under both federal Title VII and the New York State Human Rights Law.  In that case, you should find in favor of NY1 on those claims.  If, however, you find that NY1 has failed to establish each element of its affirmative defense, then you should find in favor of the Plaintiff on her hostile work environment claims under both Title VII and the New York State Human Rights law.

REVISED DRAFT 4/21/10

**B.**    <u>**Claim Three:**</u>  <u>**Hostile Work Environment Sexual Harassment Under the New York City Human Rights Law**</u>

In addition to the federal and State claims against NY1 of hostile work environment sexual harassment that I have just explained to you, Plaintiff has also brought a hostile work environment claim sexual harassment claim against NY1 under New York City law – specifically, Section 8-107 of the New York City Administrative Code, which is also referred to as the New York City Human Rights Law. As you will see, the elements of Plaintiff's claim under the New York City Human Rights Law are similar but not identical to the elements of her claims under federal and New York State law, on which I have already instructed you.

In order to sustain her burden of proof on this claim, Plaintiff must prove by a preponderance of the credible evidence the following two elements:


1. She was treated less well than other employees because of her gender; and

2. That there is a basis for holding NY1 responsible for the conduct to which Plaintiff was subjected.


As to the first element, Plaintiff must prove that she was treated less well than other employees <u>because of</u> her gender. In assessing the degree to which Plaintiff was treated less well than her co-workers, the New York City Human Rights law is intended to cover a broader range of harassing conduct. Plaintiff must prove that the harassing conduct was more than a merely offensive utterance. However, the New York City Human Rights Law does not require Plaintiff to prove conduct as severe or pervasive as that required under federal or New York State law.

The second element under New York City law – the basis for NY1's liability – also differs from federal and State law. Unlike State and federal law, which require Plaintiff to prove

20

REVISED DRAFT 4/21/10

that her employer "knew" or "should have known" about the harassing conduct, the New York

City law requires Plaintiff to prove the employer's "responsibility" for the hostile work

environment.  To satisfy this requirement, Plaintiff must prove that NY1 acquiesced in the

discriminatory conduct, or subsequently condoned it.  In determining whether NY1 acquiesced to

or condoned the discriminatory conduct, you must consider whether NY1 was aware of the

conduct but did nothing to stop it, or learned about it after the fact but took no steps to

investigate and remedy it.  It is Plaintiff's burden to prove this element by a preponderance of the

credible evidence.

REVISED DRAFT 4/21/10

### 1. **Affirmative Defense**

If, however, Plaintiff proves the elements of her claim under the New York City Human Rights Law -- that she was treated less well than other NY1 employees because of her gender, and that NY1 acquiesced in or condoned such conduct – NY1 may avoid liability if it proves the affirmative defense available under New York City law.

To establish its affirmative defense, NY1 must prove by a preponderance of the credible evidence that the conduct complained of consisted of nothing more than "petty slights and trivial inconveniences." That means, NY1 has the burden of proving that the conduct was so slight that a reasonable person would not have perceived it as creating a hostile work environment.

This concludes my instructions regarding Plaintiff's three claims of hostile work environment sexual harassment against NY1 under federal, State and City law. I will now instruct you regarding claims four, five and six, in which Plaintiff alleges retaliation against NY1, again under federal, State and City law.

**C.      Claims Four, Five and Six:  Retaliation Under Title VII, New York State Law, and New York City Law**

Under federal, New York State and New York City law, an employer cannot discriminate or retaliate against someone for engaging in protected activity.  Here, Plaintiff claims that NY1 unlawfully retaliated against her by removing her from her anchoring responsibilities and terminating her employment because she complained about alleged sexual harassment.

To establish a claim of retaliation under federal, State and City law, Plaintiff must prove the following four elements by a preponderance of the credible evidence that:

1.  Plaintiff engaged in protected activity;

2.  NY1 was aware of Plaintiff's participation in the protected activity;

3.  NY1 took an adverse employment action; and

4.  There was a causal connection between the protected activity and the adverse employment action.

I will now instruct you on each of these four elements.

Protected activity is an act that opposes any perceived discriminatory practice made unlawful under the anti-discrimination laws.  To be a protected activity for purposes of federal, State and City anti-discrimination laws, the complainant must put the employer on notice that the complainant believes that discrimination is occurring.  In other words, here, Plaintiff must prove that her complaints were complaints of sexual harassment or gender discrimination.

Regarding the second element:  Plaintiff must establish that NY1 had actual knowledge that she had engaged in this protected activity.

REVISED DRAFT 4/21/10

An adverse employment action is one that a reasonable employee would have found materially adverse – that is, an act that may have dissuaded a reasonable employee from making or supporting a charge of discrimination.  Examples of adverse employment actions include dismissal, refusal to hire, refusal to promote, demotion, reduction in pay, reprimand, and negative evaluation letters.  Other examples of adverse employment actions include a less distinguished title, material loss of benefits, significantly diminished material responsibilities, or other indices unique to the particular situation.  These are just examples, and this list is not exhaustive.  The key is whether the action may have dissuaded a reasonable employee from engaging ~~in the~~any protected activity at issue here.

Finally, Plaintiff must prove by a preponderance of the credible evidence that the NY1 took an adverse employment action against her <u>because</u> she engaged in protected activity.  That is, Plaintiff must prove that her protected activity was a motivating factor in the decision to take an adverse employment action or actions against her.  Plaintiff need not prove that NY1 took an adverse employment action against her solely, or even primarily, because of any protected activity.  However, Plaintiff must prove by a preponderance of the credible evidence that her protected activity was a <u>motivating</u> factor in NY1's decision to take an adverse action or actions against her.  In this regard, I instruct you that it is not the role of juries to second guess the decisions of employers.  An employer may take an adverse employment action against an employee based on a good reason, a bad reason, a reason based on erroneous facts, or no reason at all.  The sole inquiry here is whether Plaintiff has sustained her burden of proving that NY1

REVISED DRAFT 4/21/10

was motivated, at least in part, by the impermissible reason of retaliating against her for having engaged in protected activity.


### 1. **Affirmative Defense**

If you find that Plaintiff has proved that her protected activity was a motivating factor in a decision by NY1 to take an adverse employment action against her, NY1 may avoid liability if it can prove a valid defense to that claim. To so do, NY1 must prove by a preponderance of the credible evidence that it would have made the same decision even in the absence of Plaintiff's protected activity.


That concludes my instructions on Plaintiff's claims of retaliation against NY1 under federal, State and City law. I will now go on to instruct you on Plaintiff's claims concerning unequal pay. These claims are also brought by Plaintiff under federal, State and City law.

REVISED DRAFT 4/21/10

**D.**     **Claim Seven:  Unequal Pay Under the Federal Equal Pay Act**

Plaintiff alleges that she did not receive equal pay for the work she performed at NY1 as compared with male co-workers – in this case, Gary Anthony Ramsay and Jeff Simmons.

The basis for Plaintiff's federal unequal pay claim is the Equal Pay Act.  To establish her Equal Pay Act claim, Plaintiff must prove by a preponderance of the credible evidence each of the following three elements:

1. That NY1 employed Plaintiff and a member or members of the opposite sex in jobs requiring substantially equally skill, effort, and responsibility;

2. That the jobs were performed under similar working conditions; and

3. That Plaintiff was paid a lower wage than a member of the opposite sex doing equal work.

Under the Equal Pay Act, proof of the employer's discriminatory intent is not necessary. Accordingly, Plaintiff need not prove that the pay disparity was motivated by an intent to discriminate on the basis of gender.

In determining whether Plaintiff and a member or members of the opposite sex were employed on jobs requiring substantially equal skill, effort and responsibility, you must compare the jobs, not the individual employees holding those jobs.  It is not necessary that the two jobs be identical; the Equal Pay Act only requires proof that the performance of the jobs demands "substantially equal" skill, effort and responsibility.  In deciding whether two jobs are substantially equal, job classifications, descriptions or titles are not controlling.  You should consider the actual job requirements and performance.

REVISED DRAFT 4/21/10

In considering whether the jobs in question require substantially equal "skill," you should consider such factors as experience, training, education and ability.  These factors should be measured in terms of the performance requirements of the job.

In determining whether the jobs require substantially equal "effort," you should consider the amount of physical and mental exertion needed for the performance of the job.  The job factors that cause mental or physical fatigue or stress, as well as those that alleviate fatigue or stress, all bear on the question of effort required by the job.  It may be that jobs require equal effort in their performance even though the effort may be exerted in different ways on the two jobs. But jobs do not entail equal effort, even though they involve most of the same routine duties, if one job involves other additional tasks that require extra effort or consume a significant amount of additional time.

In determining whether the jobs involve substantially equal "responsibility," you should consider the degree of accountability involved in the performance of the work.  You should take into consideration such things as the level of authority delegated to the respective employees.

In determining whether the jobs are performed under "similar working conditions," the conditions, as the term connotes, must be "similar;" they need not be substantially equal.  You should consider the physical surroundings or the environment in which the work is performed, including the elements to which employees may be exposed, and any hazards of the work.

1. **Affirmative Defense**

If you find that Plaintiff has proven the elements of her claim, NY1 may avoid liability for unequal pay under the Equal Pay Act if it can prove an affirmative defense.  To so do, NY1 must prove by a preponderance of the credible evidence that the differential in pay between the

REVISED DRAFT 4/21/10

jobs was the result of factors other than gender.  NY claims that the pay differential was due to differences between Plaintiff, and Mr. Ramsay and Mr. Simmons with regard to their performance, relevant experience, and levels of responsibilities.  If you find that NY1 has proven this defense by a preponderance of the credible evidence, then your verdict must be for Defendants.

In evaluating NY1's affirmative defense, you may consider any evidence that NY1's proffered justification for the pay disparities is not true and that the real reason for the disparity is gender discrimination.  If Plaintiff proves, by a preponderance of the credible evidence, that gender was a reason that Plaintiff was paid a lower wage, then you should disregard the affirmative defense and find for the Plaintiff.

REVISED DRAFT 4/21/10

**E.     Claims Eight and Nine:  ~~Une~~Equal Pay Claims Under the New York State Human Rights Law and the New York City Human Rights Law**

Plaintiff has also brought claims ~~for~~ alleging ~~une~~qual pay under the New York State Human Rights Law and the New York City Human Rights Law.  Plaintiff's burden to establish her claim under State and City law is similar but not identical to the Equal Pay Act standards that I have just described.  New York State and New York City law require the Plaintiff to prove not only pay disparity, but an additional element:  namely, that the difference in pay is the result of the NY1's intent to discriminate against her, at least in part, <u>because</u> of her gender.

Thus, in order for Plaintiff to prevail on her equal pay claims under New York State and New York City law, Plaintiff must prove each of the following three elements by a preponderance of the credible evidence:

1.   Plaintiff belongs to a protected class;

2.   Plaintiff was paid less than similarly situated, non-members of her class; and

3.   That, in this case, the Plaintiff's gender was a motivating factor in the pay differential.

As to the first element, I instruct you as a matter of law that Plaintiff has established, and the parties do not dispute, that Plaintiff belongs to a protected class because she is a woman.

As to the second element – whether Ms.Sammarco, Mr. Ramsay and Mr. Simmons were "similarly situated" – you should apply the same analysis I provided to you earlier with respect to the federal Equal Pay Act in comparing their jobs.

REVISED DRAFT 4/21/10

        As to the third element, Plaintiff must prove that gender was a motivating factor in the pay differential – that is, namely, that the difference in pay is the result of the NY1's intent to discriminate against her, at least in part, <u>because</u> of her gender.



REVISED DRAFT 4/21/10

## INDIVIDUAL LIABILITY

In addition to her claims against NY1 under federal, State and City law, Plaintiff has asserted these same claims against Defendants Peter Landis, Steve Paulus, and Elizabeth Fanfant in their individual capacities, asserting that they should each be held individually liable under New York State and New York City Human Rights Laws for aiding and abetting NY1 in creating a sexually hostile work environment, and retaliating against her for complaining of sexual harassment.  In addition, Plaintiff brings claims against Defendants Landis and Paulus only, asserting that each should be held individually liable under both New York State and New York City law for aiding and abetting NY1 in subjecting her to unequal pay.  I instruct you that there can be no individual liability under any of the federal claims asserted.

The elements of aider and abettor liability are the same under both New York State and City law.  Before the individual defendants may be held liable for aiding and abetting NY1's conduct, Plaintiff must first establish NY1's liability by proving by a preponderance of the credible evidence the necessary elements of the analogous claim against NY1, as I have already instructed you.  In addition, to hold any individual Defendant liable, Plaintiff must prove by a preponderance of the credible evidence that each individual Defendant personally participated in the conduct giving rise to the claims. In assessing individual liability, you must consider the evidence against each Defendant separately.

This concludes my discussion of the elements of the Plaintiff's claims.  If you find for Plaintiff on any of her claims, you must then consider the damages to which she is entitled.  If

REVISED DRAFT 4/21/10

you do not find for Plaintiff on any of her claims, you must not consider the issue of damages. ~~I~~

~~will now explain the law of damages to you.~~



REVISED DRAFT 4/21/10

## DAMAGES

The fact that I instruct you on the subject of damages does not indicate any view on my part as to whether Plaintiff is entitled to prevail on the underlying claim.  It is for you to decide on the evidence presented and the rules of law I have given you whether the Plaintiff has proven her claim and, if so, the damages to which she is entitled.

REVISED DRAFT 4/21/10

### A.  Causation

If you return a verdict in favor of the Plaintiff against one or more of the Defendants, then you must award Plaintiff a sum of money as you believe will fairly and justly compensate her for any injuries that she has proven by a preponderance of the credible evidence to have been the direct result of conduct by the Defendants in violation of the law.    In doing so, you must distinguish between, on the one hand, the existence of a violation of Plaintiff's rights and, on the other hand, the existence of injuries naturally resulting from that violation.  A violation of a right does not always result in compensable injury.  Thus, even if you find that one or more of the Defendants deprived the Plaintiff of her rights in violation of the law, you must ask yourself whether the Plaintiff has proven by a preponderance of the credible evidence that the deprivation by caused the damages that Plaintiff claims to have suffered.

Bear in mind that a Defendant is not liable for an injury he did not cause, such as, for example, an injury that existed before the conduct in question.

I will now instruct you with regard to the types of damages you may consider.

### B.  Damages for Emotional Distress Damages

Plaintiff has alleged that, as a result of the complained of conduct, she has suffered damages for emotional distress, including emotional pain and suffering.  The Plaintiff has the burden of proving such damages by a preponderance of the credible evidence.

The nature and degree of pain and mental distress may differ widely from person to person.  Consequently, the law does not try to fix, nor does the law permit, a precise formula by which pain or emotional distress as an element of damages may be measured and reduced to dollars and cents.  Instead, the law leaves the determination of the amount of damages to the common sense and good judgment of you, the jurors.  You should arrive at a monetary amount, if

REVISED DRAFT 4/21/10

you find any is justified, that you deem to be fair, reasonable, and adequate.  ~~in the light of~~ based on your common knowledge and general experience, and without regard to sentiment~~.~~, ~~that you deem to be fair, reasonable, and adequate.~~ In other words, without favor, without sympathy, and without any precise formula, you as jurors must arrive at a sum of money that will justly, fairly, and adequately compensate the Plaintiff for the ~~actual~~ any pain, suffering, and emotional distress you find that she endured as the direct result of any violation~~s~~ she may have proven ~~suffered~~. The amount of damages should be neither excessive nor inadequate. It should be fair, just, and reasonable.

You should not award damages based on speculation or sympathy, but only for those injuries that ~~a~~ the Plaintiff has actually suffered.  Damages are not allowed as a punishment, and cannot be imposed or increased to penalize Defendants.  You may award only such damages as you find by a preponderance of the credible evidence were caused by the Defendants' wrongful conduct.

In awarding ~~actual~~ damages for emotional distress, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In awarding ~~actual~~ damages for emotional distress, you will fix one lump sum that will justly and fairly compensate the Plaintiff for the damages, if any, you find she sustained that were proximately caused by the wrongful conduct of the Defendants.

REVISED DRAFT 4/21/10

### C.  Nominal Damages

If you return a verdict in favor of the Plaintiff one or both of her federal claims under Title VII of  hostile work environment sexual harassment or retaliation, but you find that she has failed to meet her burden of proving that she suffered any emotional pain and suffering as a result, then you must award the Plaintiff "nominal damages" not to exceed one dollar ($1).

Nominal damages are the law's way of recognizing that the rights protected by Title VII must be scrupulously observed, even when a violation of those rights have not resulted in actual damages.

### D.  ~~Economic Loss (~~**Wages Under the Equal Pay Act**~~)~~

Pursuant to Title VII, and the New York State and New York City Human Rights Laws, economic damages, including any back pay or front pay, or attorney's fees, if any, to which Plaintiff may be entitled will be decided by the Court.  As a result, you are not to concern yourselves with such issues.  However, if you find for Plaintiff on one or more of her unequal pay claims, you are to consider ~~back pay~~ wages under the federal Equal Pay Act, as well under as the State and City Human Rights Laws. I will now instruct you as to those issues.

Under the federal Equal Pay Act, if you find that Plaintiff has proven her unequal pay claim, you should find as damages the amount that will compensate Plaintiff for the difference between what she was paid and what a male employee or employees was paid for performing jobs requiring substantially equal skill, effort, and responsibility which were performed under similar working conditions.

Absent willful conduct, which I will explain in a moment, a damage award~~s of wages~~ under the Equal Pay Act ~~are~~ is limited to the two years prior to the filing of this lawsuit, which

36

REVISED DRAFT 4/21/10

was filed on November 25, 2002.  Thus, in this case, the relevant time period is limited to November 25, 2000 (two years before this lawsuit was filed) through Plaintiff's termination from NY1 on March 13, 2001.  For this time period you are to calculate the following:

First, determine for the period November 25, 2000 to March 13, 2001 the average annual salary that was paid to Jeff Simmons and/or Gary Anthony Ramsey (depending on whether you find that one or both of them performed equal work to the plaintiff); and then

Second, subtract the wages that Plaintiff earned during this same period.  This figure represents the wages owed to the Plaintiff for each applicable year.  You should award wages in this amount to the Plaintiff for each applicable year.

If you find that the Defendants' violation of the Equal Pay Act was "willful, – that is, that NY1 knew or showed reckless disregard for the fact that its conduct was prohibited that means acting in a knowing and reckless way so as to violate the Equal Pay Act, you should award damages for an additional year – the period from November 25, 1999 to November 2000.

In calculating back pay, do not add an amount for interest.  This will be automatically calculated by the Court after you reach your verdict.  Finally, I caution you, if you determine that Plaintiff is entitled to damages for her equal pay claims, in determining the amount of damages, you may not include or add to the damages any sum for the purposes of punishing Defendants or serving as an example to warn others.

REVISED DRAFT 4/21/10

### E.  Punitive Damages

If you have awarded the Plaintiff either ~~actual~~ damages for emotional distress or nominal damages with respect to either her Title VII claims or her New York City Human Rights Law claims against any of the Defendants, then you may, although you are not required to do so, consider an award of punitive damages against those Defendants.  You should bear in mind that New York State's anti-discrimination law does not permit punitive damages awards and therefore you should not consider Plaintiff's State law discrimination claims when considering an award of punitive damages.

Punitive damages are awarded, in the discretion of the jury, to punish a Defendant for extreme or outrageous conduct, and to deter or prevent a Defendant and others from committing such conduct in the future.  You may award punitive damages only if you find that a Defendant's actions were done maliciously, wantonly, or oppressively.  An act or failure to act is maliciously done if it is prompted by ill will, or spite, or grudge towards the injured person.  An act or failure to act is wantonly done if done with intentional, or reckless, or callous disregard of, or indifference to the rights of the injured person.  An act or failure to act is oppressively done if done in a way or manner that injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or disability, or misfortune of another person.

The Plaintiff has the burden of proving, by a preponderance of the credible evidence, that a Defendant acted maliciously or wantonly or oppressively with regard to the Plaintiff's rights.

Whether or not to make an award of punitive damages is a matter exclusively within your discretion; that is, even if you find that a particular Defendant acted maliciously, wantonly, or oppressively, an award of punitive damages is entirely discretionary.

REVISED DRAFT 4/21/10

In making this decision, you should consider the underlying purposes of punitive damages.  You should consider whether the Defendant has been adequately punished by any award of actual damages you make, or whether the conduct is so extreme and outrageous that the actual damages you award are inadequate to punish the wrongful conduct.  When awarded, the amount of punitive damages must be determined with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

If you do decide to award punitive damages, the amount of punitive damages should be determined in consideration of the degree of reprehensibility of the Defendant's conduct and the relationship between the amount of punitive damages and any actual harm inflicted upon the Plaintiff.  The amount of punitive damages should be reasonable and should be proportionate to the need to punish the Defendant and to deter the Defendant and others from similar conduct.

I instruct you that an attorney's argument as to the amount of actual or punitive damages you should award the Plaintiff is not binding on you.  It is not evidence.  It is the sole and exclusive function of the jury to determine the amount of money, if any, that will justly and fairly compensate the Plaintiff for any injuries and damages she has sustained.  Your damage award, if any, should be based upon the testimony and other evidence received during the trial.

REVISED DRAFT 4/21/10

### F.  No Double Recovery

You should not award damages more than once for the same injury.  For example, if Plaintiff were to prevail on both her claim of hostile work environment sexual harassment and her claim of retaliation and establish damages for the same injury under those claims, you may not award damages for both of those claims.  A plaintiff is entitled to be made whole, but is not entitled to recover more than she lost.  However, if different injuries are attributed to separate claims, then you should compensate Plaintiff for all of her injuries.

REVISED DRAFT 4/21/10

### III.  CLOSING INSTRUCTIONS

Now that I have outlined for you the law applicable to the charges in this case and the processes by which you should weigh the evidence and determine the facts, I will give you some guidance for use in your deliberations.

In a few minutes you will retire to the jury room for your deliberations.  Your first order of business when you are in the jury room will be to elect a foreperson.  Traditionally, Juror No. 1 acts as foreperson.  In order that your deliberations may proceed in an orderly fashion, you must have a foreperson, but of course, his or her vote is entitled to no greater weight than that of any other juror.

Your function—to reach a fair decision from the law and the evidence—is an important one.  I remind you that your verdict must be based solely upon the evidence developed at this trial.  I want to remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and the applicable law.  You must keep this in mind when you determine the facts.

When you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves.  Each of you as a juror has a duty to consult with one another and to deliberate with a view toward reaching agreement on a verdict if you can do so without violating your individual judgment and your conscience.  Remember, you must all agree on the verdict; your verdict must be unanimous.

While you should not surrender conscientious convictions of what the truth is, and of the weight and effect of the evidence, and while each of you must decide the case for yourself and not merely consent to the decisions of your fellow jurors, you should examine the issues and the

REVISED DRAFT 4/21/10

evidence before you with candor and frankness, and with proper respect and regard for the

opinions of each other.  Remember when you deliberate that the dispute between the parties is,

for them, a very important matter.  They and the court rely on you to give full and conscientious

deliberation and consideration to the issues and evidence before you.  By so doing, you carry out

to the fullest your oaths as jurors to try the issues of this case and render a true verdict.

From this point forward and until this case has concluded, no member of the jury should

attempt to communicate with the Court by any means other than a signed writing passed to the

Courtroom Deputy Clerk, and the Court will not communicate with any member of the jury on

any subject touching the merits of the case otherwise than in writing, or orally here in open court.

Bear in mind also that you are not to reveal to any person—not even to the Court—how

the jury stands, numerically or otherwise, on any questions before you, until you have reached a

unanimous verdict.

During your deliberations, please remember you must not provide any information to

anyone by any means about this case.  Thus, for example, do not use any electronic device or

media, such as a telephone, a cell or smart phone, Blackberry, PDA, computer, the Internet, any

Internet service, any text or instant messaging service, any Internet chat room, blog, or website

such as Facebook, My Space, YouTube, or Twitter, to communicate to anyone any information

about this case until I accept your verdict.

I will send in to the jury room the exhibits that have been received into evidence.  If

during your deliberations you wish to see any of the video exhibits, that are not already available

to you in the jury room, you may make a simply request that in writing and we will reconvene in

the courtroom and play the video. give it to the Courtroom Deputy Clerk.  If you want any of the

testimony read, that can also be done.  But, please remember that it is not always easy to locate

REVISED DRAFT 4/21/10

what you might want, so be as specific as you possibly can in requesting exhibits or portions of

testimony which you may want.

Reading back testimony takes substantial time, not only in actually reading the testimony

back to you, but also in finding the portions of the transcript responsive to your request.  We can't

send the transcript in to you because the transcript includes matters that are not in evidence such

as the side-bars.

So exhaust your own recollections through discussion among yourselves and then decide

if the actual words used in the course of the testimony are necessary in order to refresh your

recollection.  If you do send me a note, let me suggest this procedure:  Have somebody other

than the person who wrote the note read it out loud to everybody.  That will make sure that the

note adequately expresses what you have in mind.  It will also make sure that somebody other

than the writer of the note can read it.

Again, let me remind you that if you do send me a note, do not tell me the results of any

vote you have taken.  Only when you have reached a unanimous verdict, one way or the other,

should you communicate to the Court where you stand in your deliberations.

When you have reached a verdict, simply send me a note signed by your foreperson that

you have reached a verdict.  Do not indicate in the note what the verdict is.  I have prepared a

special verdict sheet which you will have with you in the jury room.  The special verdict sheet

contains questions and the answers to those questions that will constitute your verdict.  After all

the questions are completed, the foreperson should sign with his or her juror number, date the

verdict sheet, and return the written verdict sheet to the Courtroom Deputy Clerk.  You may not

infer from the fact that questions are submitted to you or from the wording of the questions, or

REVISED DRAFT 4/21/10

from anything that I say in instructing you concerning the questions, that it is the Court's view that your answer to any of the questions should be one way or the other.

Remember that the parties and the Court are relying upon you to give full and conscientious deliberation and consideration to the issues and evidence before you.  The oath that you took as jurors sums up your duty, and that is: without fear or favor, you will truly try the issues between these parties according to the evidence given to you in court and the laws of the United States.